## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| JOSEF F. BOEHM, )  | |
|                              ) | |
|              Plaintiff,      ) | |
|                              ) | |
|       v.                     ) | Civil Action No. 09-2173 (ABJ) |
|                              ) | |
| FEDERAL BUREAU OF            ) | |
| INVESTIGATION, *et al.*,     ) | |
|                              ) | |
|              Defendants.     ) | |
| _____) | |

### MEMORANDUM OPINION

Plaintiff Josef Franz Boehm brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), and the Privacy Act, 5 U.S.C. § 552(a) (2006). Plaintiff's complaint challenges defendants' responses to written requests that he made to the Federal Bureau of Investigations ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), and the Criminal Division ("CRM") of the United States Department of Justice ("DOJ"). The requests sought copies of any records in agency files from the years 2000 to 2009 that mention or concern Joseph Franz Boehm. All three agencies have now responded to plaintiff's requests by conducting searches, disclosing some responsive records, and providing their reasons for withholding others. Defendants have filed a motion for summary judgment. Defs.' Mot. for Summ. J. ("Defs.' Mot.") [Dkt. # 36]. Plaintiff opposes the motion, challenging the adequacy of the agencies' searches and their withholdings. Pl.'s Response to Defs.' Mot. for Summ. J. ("Pl.'s Opp.") [Dkt. # 42]. Because the agencies conducted adequate searches, but they have not provided adequate explanations for some of their withholdings, the Court will grant in part and deny in part defendants' motion.

## BACKGROUND

Plaintiff is currently incarcerated at the Seagoville Federal Correctional Institution in Seagoville, Texas.  Compl. [Dkt. # 1] ¶ 1.  In 2004, he pled guilty to one count of conspiracy to commit the crime of sex trafficking of children, in violation of 18 U.S.C. §§ 371 and 1591(a)(1), and one count of conspiracy to distribute controlled substances to persons under age twenty-one, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 859(a).  Court Minutes, *United States v. Boehm*, Case No. 3:04-cr-00003-JWS (D. Alaska Nov. 22, 2004) [Dkt. # 692]; *see also* Hardy Decl. [Dkt. # 36-5] ¶ 5.  In May 2005, he was sentenced in the United States District Court for the District of Alaska to approximately eleven years in prison.  Judgment, *United States v. Boehm*, Case No. 3:04-cr-00003-JWS (D. Alaska May 16, 2005) [Dkt. # 779-1].

On June 22, 2009, plaintiff submitted written requests to the FBI, the EOUSA, and the CRM under the Privacy Act and FOIA.  Ex. A to Luczynski Decl. [Dkt. # 36-4] (EOUSA); Ex. B to Hardy Decl. (Criminal Division of DOJ); Ex. A to Argall Decl. [Dkt. # 36-2] (FBI).  All of the requests stated:

> I am requesting access to all records in agency files, including but not limited to all documents and records concerning Josef Franz Boehm . . . for the years between 2000 and 2009 inclusive. . . .  This is an all-inclusive request and includes any document, wherever located, in which the name of Josef Franz Boehm is made mention or listed including investigations of persons or business entities other than Josef Franz Boehm.

*Id.*  The requests included plaintiff's date of birth, social security number, register number, place of birth, and the criminal case number of the offense for which he is currently incarcerated.  *Id.*

### I.    Request to the EOUSA

The EOUSA acknowledged receipt of plaintiff's request by letter dated August 18, 2009.  Ex. B to Luczynski Decl.  On August 27, 2010, it responded to the request.  Ex. C to Luczynski Decl.  The response stated that the records plaintiff sought were located in a system of records

that is exempt from the access provisions of the Privacy Act.  *Id.*  However, pursuant to FOIA, the EOUSA released 92 pages of responsive material in full and 128 pages in part.  *Id.*  In addition it withheld 1,545 pages of responsive material under FOIA Exemptions 3, 5, 7(C), 7(D), and 7(F), as well as grand jury material.  *Id.*  The letter also stated that the EOUSA had located records that originated with the FBI and that those the records were being referred to the FBI for review and for direct response to plaintiff.  *Id.*  The letter also notified plaintiff of the procedure for appealing the EOUSA's decision.  *Id.*

According to the declaration of David Luczynski, Attorney Advisor for the EOUSA, the EOUSA referred 2,414 pages of material to the FBI.  Luczynski Decl. ¶ 6.  In addition, on October 27, 2010, the EOUSA referred to the FBI case audiotapes and DVDs that had been compiled prior to plaintiff's prosecution.  *Id.* ¶ 7.  The EOUSA also received a four-page referral letter sent by the CRM on March 14, 2011.  *Id.* ¶ 8.

## II.      Request to the CRM

On July 21, 2009, the CRM sent plaintiff a letter acknowledging its receipt of his request and notifying him that additional information was required.  Ex. 2 to Cunningham Decl. [Dkt. # 36-3]; Cunningham Decl. ¶ 7.  Plaintiff provided the additional information to the agency, Ex. 3 to Cunningham Decl., and the agency acknowledged receipt on August 31, 2009, Ex. 4 to Cunningham Decl.  The CRM's first substantive response to plaintiff's request stated that all of the responsive documents uncovered by its search were exempt from disclosure under FOIA Exemption (7)(A) because the records related to an open and ongoing law enforcement proceeding and release could reasonably be expected to interfere with the proceeding.  Ex. 5 to Cunningham Decl.  However, the agency later determined that the records should no longer be withheld under Exemption 7(A), but that the FBI – not the CRM – was the proper processing

agency for the records because they had originated with the FBI.  Cunningham Decl. ¶ 14.  The

CRM then forwarded the records to the FBI for processing and direct reply to plaintiff.  *Id.*

The CRM also received 202 pages of material from the FBI, which the CRM later

determined to have originated from the EOUSA and the U.S. Marshals Service.  *Id.* ¶¶ 15, 16.

The CRM forwarded the documents to the originating agencies.  *Id.*  The CRM did not identify

any responsive materials that had originated with it.  *See id.* ¶ 17.

### III.     Request to the FBI

The FBI acknowledged receipt of plaintiff's request by letter dated July 8, 2009.  Ex. B to

Argall Decl.  On September 14, 2009, it responded to the request by a second letter.  Ex. C to

Argall Decl.  That response stated that the material requested was located in an investigative file

which is exempt from disclosure pursuant to FOIA Exemption 7(A).  *Id.*  It further stated that

plaintiff could file an appeal by writing to the DOJ Office of Information Policy, and that any

appeal must be received within sixty days from the date of the response letter.  *Id.*  The Office of

Information Policy has no record of receiving a notice of appeal from plaintiff, Argall Decl. ¶ 10,

and plaintiff does not claim that he filed one, *see* Pl.'s Opp. at 7–8 (arguing that failure to

exhaust does not preclude the Court from hearing plaintiff's claims).

### IV.     Documents referred to the FBI from other agencies

By letter dated November 12, 2010, the FBI informed plaintiff that it had received

approximately 4,791 pages of material from other agencies that had originated with the FBI, and

that the material might be responsive to his request.  Ex. C to Hardy Decl. [Dkt. # 36-6].  The

FBI determined that all of this material was exempt from disclosure under the Privacy Act.

Hardy Decl. ¶ 26.  However, the FBI eventually released 1,359 pages of responsive material

under FOIA, of which 431 pages were released in full and 928 pages were released in part.  *Id.*

¶ 27; *see also* Exs. E, G, J, M, O to Hardy Decl. [Dkt. # 36-6].  The FBI also released sixteen responsive CDs containing audio and two responsive DVDs containing video to plaintiff under FOIA.  Hardy Decl. ¶ 27.  The FBI withheld 2,763 pages in full, of which 628 pages were withheld because they were duplicates of other released pages and 2,135 pages were withheld under FOIA exemptions and/or a court order sealing them.  *Id.*

> **V.     Procedural Background**

Plaintiff, acting *pro se*, filed the complaint in this action on November 16, 2009.  The complaint alleges that "defendants have failed, refused, and neglected to comply with Plaintiff's reasonable requests for records, documents, and discovery."  Compl. ¶ 10.  It seeks an order requiring defendants to produce all documents responsive to his request, including without limitation, all *Brady* and Jenks Act material relevant to his criminal case, all communications about him by the United States Attorney's Office, all FBI 302 reports concerning him, all in-house agency reports, documents, and records naming him, and all material exculpatory or impeaching documents concerning the criminal investigation of him.  Compl. at 3.  After defendants notified the Court and plaintiff of their withholdings, the Court ordered plaintiff to notify the Court whether he intended to challenge some or all of the FOIA exemptions and, if so, to indicate to the Court whether he wanted to designate a representative sample or have defendants propose the sample and allow him to supplement it.  Minute Order (June 29, 2011).

In response, plaintiff filed a motion for *Vaughn* index, [Dkt. # 19], and a notice of intent to challenge the asserted FOIA exemptions, [Dkt. # 20] ("Notice of Intent").  Plaintiff requested that he designate the representative sample.  Notice of Intent.  Defendants opposed plaintiff's motion and requested that the Court order defendants to designate a representative sample within thirty days, and order plaintiff to designate supplemental material within thirty days after

defendants' designation.   [Dkt. # 21].   By Minute Order of September 30, 2011, the Court ordered defendants to prepare a representative sample of documents that they were withholding under FOIA exemptions, transmit the sample to plaintiff accompanied by a letter explaining the representative nature of the sample, and file a notice of designation with the Court by October 31, 2011.   The Court further ordered plaintiff to designate any supplemental material and file a notice of designation with the Court by December 1, 2011.

Defendants filed their notice of designation on October 31, 2011.   [Dkt. # 22].   The EOUSA has filed a declaration by David Luczynski, an Attorney Advisor with the EOUSA who is responsible for matters related to FOIA, Luczynski Decl. ¶ 1, that states that the EOUSA reviewed all of the responsive documents and prepared a 200-page sample out of unredacted and partially redacted pages.   Luczynski Decl. ¶ 9 & n.1.   According to the declaration, the sample was chosen to be "both a fair representative of all the FOIA Exemptions taken, and to also reflect the wide variety of documents contained within the release."   *Id.* ¶ 9.   The sample was sent to plaintiff on October 28, 2011.[1]   *Id.* ¶ 9.   In addition, the EOUSA provided a *Vaughn* index of all of the documents in the representative sample as well as a supplemental *Vaughn* index of a 154-page representative sample of the 1,545 pages of documents that were withheld in full.   *Id.* ¶¶ 9, 10.   According to Luczynski, "[t]hese records are selected as a fair and accurate representation" of the withheld documents.   *Id.* ¶ 10.

The FBI has submitted a declaration by David M. Hardy, the Section Chief of the Record/Information Dissemination Section, Records Management Division of the FBI, Hardy Decl. ¶ 1, which states that the FBI has designated a representative sample consisting of 422 pages, one CD, one DVD, and one audiotape.   *Id.* ¶ 24; Ex. P to Hardy Decl. [Dkt. # 36-7].

---

1       The same sample was filed on the public docket in this action on April 30, 2013.   Notice of Filing of Representative Sample [Dkt. # 45].

According to the declaration, this sample is representative of documents that were both withheld in part and withheld in full.  Hardy Decl. ¶ 24.  In addition, the FBI provided a *Vaughn* index of all of the documents in the representative sample along with a key to the codes used in the *Vaughn* index.   Hardy Decl. at 8–13 ("FBI *Vaughn* Index"); Summary of Justification Categories, Hardy Decl. at 17–18.  The Hardy declaration states that the indexed documents are representative of all the FOIA exemptions cited and reflective of the variety of documents contained within the responsive records.  Hardy Decl. ¶ 24.

Plaintiff did not designate any supplemental material in response to defendants' designations.  On January 18, 2012, the Court entered a scheduling order for dispositive motions.  Sched. Order [Dkt. # 26].  Defendants filed a motion for summary judgment on November 23, 2012.  Defs.' Mot.  Counsel subsequently entered an appearance on behalf of plaintiff, Notice of Appearance [Dkt. # 39]; *see* Minute Order (Jan. 25, 2013), and plaintiff filed an opposition to defendants' motion through counsel, Pl.'s Opp.  Defendants filed their reply on April 11, 2013.  Defs.' Reply to Pl.'s Response to Mot. for Summ. J. ("Defs.' Reply") [Dkt. # 44].

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing there is a

7

genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).  The existence of a factual

dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the

non-moving party; a fact is only "material" if it is capable of affecting the outcome of the

litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In

assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the

light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550

U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654,

655 (1962) (per curiam).

## ANALYSIS

I.     **The Privacy Act**

The Privacy Act provides:

> Each agency that maintains a system of records shall . . . upon request by
> any individual to gain access to his record or to any information pertaining
> to him which is contained in the system, permit him . . . to review the
> record and have a copy made of all or any portion thereof in a form
> comprehensible to him . . . .

5 U.S.C. § 552a(d)(1).  Thus, any material that is subject to the disclosure provision of the

Privacy Act must be a "record" that is, in turn, contained in a "system of records."  *Fisher v.

Nat'l Inst. of Health*, 934 F. Supp. 464, 468 (D.D.C. 1996).

When a plaintiff challenges an agency's withholding of documents under the Privacy

Act, the court determines *de novo* whether the withholding was proper, and the burden is on the

agency to sustain its action.  5 U.S.C. § 552a(g)(2)(A); *Doe v. United States*, 821 F.2d 694, 697–

98 (D.C. Cir. 1987) (finding that in this context, *de novo* means "a fresh, independent

determination of 'the matter' at stake," and the court need not give "deference . . . to the

agency's conclusion") (en banc); *see also Skinner v. DOJ*, 584 F.3d 1093, 1096 (D.C. Cir. 2009). "[T]he [Privacy] Act 'safeguards the public from unwarranted collection, maintenance, use, and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used." *McCready v. Nicholson*, 465 F.3d 1, 7–8 (D.C. Cir. 2006), quoting *Bartel v. Fed. Aviation Admin.*, 725 F.2d 1403, 1407 (D.C. Cir. 1984).

Defendants assert that all of the records at issue here fall under an exemption to disclosure, codified at 5 U.S.C. § 552a(j)(2) ("Exemption j(2)").  Exemption j(2) applies if:  (1) the records are stored in a system of records that has been designated by the agency to be exempt from the Privacy Act's disclosure requirements, and (2) the system of records is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal law[s]" and consists of "information compiled for the purpose of a criminal investigation."  5 U.S.C. § 552a(j)(2); *see also* Defs.' Mem. in Support of Mot. for Summ. J. ("Defs.' Mem.") [Dkt. # 36-1] at 9–10.

Plaintiff has not opposed defendants' assertion of Exemption (j)(2) over any of the material at issue in this case, so the Court may properly treat defendants' assertion as conceded. *See McMillan v. Wash. Metro. Area Transit Auth.*, 898 F. Supp. 2d 64, 69 (D.D.C. 2012), citing *Howard v. Locke*, 729 F. Supp. 2d 85, 87 (D.D.C. 2010) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion . . . addressing only certain arguments raised

by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").[2]

## II.    FOIA

"[A]ccess to records under [FOIA and the Privacy Act] is available without regard to exemptions under the other." *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  Accordingly, the Court will next turn to plaintiff's FOIA claims.

The purpose of FOIA is to require the release of government records upon request and to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220, 242 (1978).  At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping

_____

2       In addition, the Court is satisfied that defendants have met their burden to show that Exemption (j)(2) applies to any responsive records covered by the Privacy Act.  With respect to the FBI records, the Hardy declaration states that the records relate to investigations and/or matters within the FBI's investigatory authority, and were compiled as a result of the coordinated legitimate law enforcement efforts between local law enforcement and the FBI to investigate child sex trafficking and drug violations.  Hardy Decl. ¶ 26.  And with respect to the EOUSA records, the Luczynski declaration states that plaintiff's entire request pertains to criminal investigations, and therefore the responsive records were necessarily compiled for law enforcement purposes.  Luczynski Decl. ¶ 15.  Criminal case files maintained by U.S. Attorney's Offices are part of the DOJ Privacy Act System of Records and are designated by the agency as exempt from the Privacy Act's disclosure requirements under 28 C.F.R. § 16.81(a)(4).  *See Adionser v. DOJ*, 811 F. Supp. 2d 284, 301 (D.D.C. 2011) (finding records from criminal case files to be exempt from disclosure under Exemption (j)(2), *affirmed by* No. 11-5093, 2012 WL 5897172, at *1 (D.C. Cir. Nov. 5, 2012); *Plunkett v. DOJ*, -- F. Supp. 2d --, Civ. A. No. 11-0341(RWR), 2013 WL 628546, at *11 (D.D.C. Feb. 20, 2013) (same).

certain information confidential."). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail at the summary judgment phase in a typical FOIA action, an agency must satisfy two elements. First, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "[A]t the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), citing *Oglesby*, 920 F.2d at 68. Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith[,]" *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Id.*, quoting *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001). Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). After asserting and explaining its exemptions, an agency must release "[a]ny reasonably segregable portion of a record" and provide it to the requesting party, "after deletion of the portions which are exempt." 5 U.S.C. § 552(b).

Once a FOIA request has been processed, a plaintiff is required to exhaust all administrative remedies before bringing an action to compel disclosure of documents. *See* 28 C.F.R. § 16.9(c) (2012); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). Failure to exhaust such remedies bars the lawsuit. *See Banks v. DOJ*, 813 F. Supp. 2d 132, 138–39 (D.D.C. 2011) (granting agency's motion for summary judgment in FOIA action where the plaintiff failed to

file an administrative appeal before filing the lawsuit); *Schwaner v. Dep't of Army*, 696 F. Supp. 2d 77, 81 (D.D.C. 2010) (same). A plaintiff is deemed to have exhausted his administrative remedies with respect to his FOIA request when an agency "fails to comply with the applicable time limit provisions" of FOIA. 5 U.S.C. § 552(a)(6)(C)(i). The agency has twenty days to make an initial determination, and following an administrative appeal of a FOIA decision, twenty days to make a determination on the appeal. 5 U.S.C. § 552(a)(6)(A)(i)–(ii).

The district court reviews the agency's action *de novo*, and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Once the case comes to court, "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). In any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations[.]" *Moore*, 601 F. Supp. 2d at 12.

1.   Defendants are entitled to summary judgment as to the documents that originated with the FBI and that were located at the FBI at the time the request was received because plaintiff failed to exhaust his administrative remedies.

Defendants first argue that summary judgment is warranted for the subset of documents that originated with the FBI and that were located at the FBI at the time the request was received by the agency. Defs.' Mem. at 5. These documents were processed by the FBI and, in a letter dated September 14, 2009, plaintiff was informed that the FBI was withholding them under

FOIA exemption 7(A) and that they were exempt from the Privacy Act's disclosure requirement.[3] Ex. C to Argall Decl.  In addition, the letter informed plaintiff that he could file an appeal by writing to the Director of the Office of Information Policy for DOJ within sixty days. *Id.*  Defendants assert that the Office of Information Policy never received an appeal from plaintiff, Argall Decl. ¶ 10, and therefore that plaintiff's challenge in this Court to the FBI's withholding of these records is barred for failure to exhaust administrative remedies.

Plaintiff does not claim that he filed an administrative appeal of the FBI's decision. Rather, he argues that failure to exhaust does not preclude judicial review of his challenge.  Pl.'s Opp. at 7–8.  Plaintiff is correct that "the exhaustion requirement is not jurisdictional because the FOIA does not unequivocally make it so."  *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003).  "[S]till, as a jurisprudential doctrine, failure to exhaust precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar."  *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (internal quotation marks omitted), quoting *Hidalgo*, 344 F.3d at 1258–59.  And "the FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review."  *Hidalgo*, 344 F.3d at 1259.  Moreover, permitting plaintiff to obtain judicial review without exhausting his administrative remedies in this case would undermine the purpose for the exhaustion requirement:  "preventing premature interference with agency processes, affording the parties and the courts the benefit of the agency's experience and expertise, or compiling a record which is adequate for judicial review."  *Id.* (alterations and internal quotation marks omitted), quoting *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993). Since plaintiff did not object to the FBI's decision before the Office of Information Policy, the

---

3    FOIA exemption 7(A) applies to records or information compiled for law enforcement purposes when their production could reasonably be expected to interfere with enforcement proceedings.  5 U.S.C. § 552(b)(7)(A).

agency has not had a chance to reconsider its initial decision in light of his objections, and this Court does not have before it the record that such a review would have produced.

Plaintiff argues that this case is distinct because the FBI has waived the affirmative defense of failure to exhaust by not raising it in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and not asserting it in the answer to plaintiff's complaint.  Pl.'s Opp. at 8. This is plainly wrong; defendants asserted the failure to exhaust defense with particularity as the "third defense" in their answer to plaintiff's complaint.   Answer [Dkt. # 4] at 2 & n.2. Accordingly, that defense has not been waived under Federal Rule of Civil Procedure 12(h).  *See* Fed. R. Civ. P. 12(h)(2) (stating that failure to state a legal defense to a claim may be raised in any pleading allowed or ordered under Rule 7(a), which includes an answer to a complaint).

Plaintiff also argues that the FBI should be estopped from raising the exhaustion defense because it continued to provide documents to plaintiff after he filed suit.  Pl.'s Opp. at 8.  This argument is misleading.  While the FBI did continue to provide documents to plaintiff even after it asserted the exhaustion defense in this Court, they were documents that had been referred to the FBI from other agencies because they originated from the FBI but were housed in a different agency at the time of the request.  *See* Hardy Decl. ¶¶ 6–23.  Plaintiff offers no evidence that the FBI ever revisited its initial decision regarding the documents that originated from the FBI and were located at the FBI at the time the agency received the request.  Those are the only records with which the FBI's September 14, 2009 decision was concerned.  Therefore, the Court will not consider whether such conduct would warrant estoppel.

Consistent with the precedent from this circuit, the Court finds that plaintiff is barred for failure to exhaust administrative remedies from challenging the FBI's decision on the subset of documents that originated from the FBI and were located at the FBI at the time of plaintiff's

request.  *See also Love v. FBI*, 660 F. Supp. 2d 56, 59–60 (D.D.C. 2009) (finding that the plaintiff's failure to exhaust his administrative remedies barred his claim); *Callaway v. U.S. Dep't of Treasury*, Civ. A. No. 04-1506(RWR), 2006 WL 6905083, at *4–5 (D.D.C. Apr. 26, 2006) (finding that the plaintiff's challenge to some of the agency's withholdings was barred for failure to exhaust administrative remedies because the plaintiff did not appeal the agency's decision to the Office of Information Policy).

    2.    The defendant agencies performed adequate searches.

    Plaintiff next asserts that defendants did not perform adequate searches for records responsive to his request.  To prevail in a FOIA case, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Ogelsby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir 1990). "[A]t the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), citing *Ogelsby*, 920 F.2d at 68.  Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith," *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'"  *Id.*, quoting *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).

    To show that the CRM and the EOUSA performed adequate searches for information responsive to plaintiff's requests, defendants have submitted declarations by John Cunningham III – a Trial Attorney in the CRM currently assigned to the FOIA and Privacy Act Unit, Cunningham Decl. ¶ 1; and David Luczynski.

The Cunningham declaration states that the CRM searched its central index of records, "which is the most comprehensive system of records maintained by the Division and contains information about people referred to in potential/actual cases and other matters of concern to the Criminal Division." Cunningham Decl. ¶ 10. It used plaintiff's name as a search term, as well as the names of the co-defendants in his criminal case. *Id.*; *see also* Ex. 3 to Cunningham Decl. In addition, since plaintiff had indicated in his submission of materials to the CRM that the sections of the CRM that he reasonably believed may contain responsive records were the Child Exploitation and Obscenity Section, the Narcotics and Dangerous Drugs Section, and the FOIA and Privacy Act Unit of the Office of Enforcement Operations, the CRM made specific requests to those units. Cunningham Decl. ¶ 10; *see also* Ex. 3 to Cunningham Decl. Responsive documents were found only in the Child Exploitation and Obscenity Section. Cunningham Decl. ¶¶ 10, 12. Those documents were originally withheld under FOIA Exemption 7(A), but that exemption was later determined to be inapplicable. *Id.* ¶¶ 13–14. However, the CRM determined that the documents had originated from the FBI, so they were referred to that agency for further processing. *Id.* ¶ 14. In addition, the CRM received materials from other agencies for processing, but it determined that none of those documents had originated with the CRM and it referred the material to the agencies where the materials had originated for further processing. *Id.* ¶¶ 15–16. The declarant states that in his experience, it is not unusual for the CRM to locate no original records in response to Privacy Act requests from federal inmates because it is not the agency responsible for prosecuting or investigating most federal criminal cases. *Id.* ¶ 17. Consistent with that experience, the declarant notes that plaintiff in this case was prosecuted by the United States Attorney's Office in Anchorage, Alaska, and not by the CRM. *Id.*

The Luczynski declaration states that, upon receiving plaintiff's request, the EOUSA forwarded it to the FOIA contact for the District of Alaska because each United States Attorney's Office maintains the case files for criminal matters prosecuted by that office. Luczynski Decl. ¶ 12.  The FOIA contact for the District of Alaska searched for records from the case files in plaintiff's criminal case, and sent emails to the Assistant United States Attorneys in the Criminal Division to ascertain whether they had any responsive records.  *Id.*  To search for files, the FOIA contact used the "LIONS" system, which is a computer system used by United States Attorneys' Offices to access databases which can be used to retrieve files pertaining to cases and investigations based on a defendant's name, the internal administrative number for the case, and the district court case number.  *Id.*  The FOIA contact used plaintiff's name as the search term.  *Id.*  According to the declarant, "[a]ll responsive documents to Plaintiff's FOIA request would have been located in the [United States Attorney's Office] for the District of Alaska . . . .  There are no other record systems or locations within EOUSA or DOJ in which other files pertaining to Plaintiff's name were maintained."  *Id.*[4]

These affidavits establish that the agencies searched the databases that were likely to turn up documents responsive to plaintiff's requests using search terms that correspond to the scope of the requests.  In addition, because the EOUSA had employees who were familiar with plaintiff's criminal case, it also requested additional documents from those individuals.  The Court therefore finds, on the basis of defendants' affidavits, that the searches were "reasonably calculated to uncover all relevant documents."  *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

---

4       Any challenge to the adequacy of the FBI's search is barred by plaintiff's failure to exhaust his administrative remedies for the reasons already explained by the Court.

Plaintiff's main objection to the adequacy of the agencies' searches is that they did not uncover all of the documents that he believes they should have.  Pl.'s Opp. at 5–7.  While the defendants have uncovered over 4,000 documents, plaintiff posits that the searches were deficient because he believes "the actual number of responsive documents currently in the government's possession. . . total[s] around 15,000."  Boehm Decl. [Dkt. # 42-1] ¶ 4; *see also* Pl.'s Opp. at 5–6 ("[O]nly a fraction of the documents known to exist have to date been produced or even cited for exemption by defendants.  Of the nearly 15,000 documents Plaintiff encountered as part of his criminal prosecution, only 4173 have been identified by defendants.").  But plaintiff provides no support for his belief that the government possesses 15,000 responsive documents or that a prosecution of an individual for the charges involved here would have generated that volume of paper.[5]   In addition, his argument does not account for any withheld documents that originated from, and were in the possession of, the FBI at the time his requests were received – which this Court has already determined that it may not review because plaintiff failed to exhaust his administrative remedies to challenge the agency's response to his request.

In addition, plaintiff does not identify any problems with the way in which the search was conducted, but rather challenges the results of the search.  However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."); *see also Adionser v. DOJ*, 811

---

5       The government does not indicate how many documents were used in plaintiff's criminal prosecution and since plaintiff ultimately pled guilty to the criminal charges against him, there is no list of government exhibits on the public docket for his criminal case.  Case No. 3:04-cr-00003-JWS (D. Alaska).

F. Supp. 2d 284, 293 (D.D.C. 2011) (rejecting a plaintiff's challenge to the adequacy of a search because he challenged it "based on the *results* of the search rather than the actual *method* by which" the search was conducted).

Plaintiff has provided no basis for the Court to find that the search in this case was inadequate.  This case is therefore distinguishable from the case he cites, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326–28 (D.C. Cir. 1999), in which the D.C. Circuit found a search for a particular document to be inadequate because the document was produced to the requester with pages missing, and there were other obvious places and sources likely to turn up the missing pages that had not been searched.  Pl.'s Opp. at 5.

Plaintiff also argues that defendants' searches failed to uncover documents related to his criminal case that were mentioned in a report about prosecutorial misconduct in the case *United States v. Theodore F. Stevens*, Case. No. 08-cr-231 (D.D.C. 2009), and that would have been responsive to his request.  Pl.'s Opp. at 6.  According to plaintiff, this proves that the government did not act in good faith in searching for responsive documents.  *Id.*  While it is true that a plaintiff can rebut an agency's initial demonstration of the adequacy of the search with evidence that the search was not made in good faith, *see Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001), plaintiff has not made a showing of bad faith here.  First, the report that plaintiff cites does not contain any indication that the documents plaintiff claims should have been released were created and retained by the CRM or the EOUSA.  *See Callaway v. U.S. Dep't of Treasury*, 893 F. Supp. 2d 269, 275 (D.D.C. 2012), quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) ("The FOIA 'only obligates [an agency] to provide access to those [documents] which it in fact has created and retained."").  Moreover, even if the agencies have the documents, there is some possibility that they have been legitimately

withheld in full under a FOIA exemption.  And although plaintiff argues vigorously that the withholding of any of these documents would not be appropriate, Pl.'s Opp. at 6–7, that inquiry is not part of the assessment of the adequacy of the search and it will be addressed in connection with the Court's assessment of defendants' asserted FOIA exemptions on the merits.  *See infra* Section 4.  Since plaintiff has presented no evidence that the CRM and the EOUSA did not perform their searches in good faith, and since the agencies have demonstrated that their searches were reasonably calculated to uncover all relevant documents, the Court finds that the searches were adequate.

> 3.   <u>With certain exceptions, the *Vaughn* indices provided by defendants are adequate and the Court need not review the withheld documents *in camera*.</u>

Both the FBI and the EOUSA have provided plaintiff and the Court with *Vaughn* indices of a representative sample of the withheld documents.  Contrary to arguments advanced by plaintiff, the fact that each entry in the indices is representative of other documents that have not been individually indexed does not reveal any deficiency in the quality of the indices. "Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved."  *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991).

Moreover, defendants' use of representative sampling complied with this Court's directions.  Defendants first proposed proceeding by sampling in their status reports of May 12, 2011, [Dkt. # 14], and June 27, 2011, [Dkt. # 15].  By Minute Order of June 29, the Court ordered plaintiff to notify the Court whether he intended to challenge some or all of the FOIA exemptions that defendants asserted and, if so, to indicate whether he wanted to designate a representative sample or have defendants propose the sample and allow him to supplement it as may be appropriate.  Plaintiff proceeded to file a motion for *Vaughn* Index, [Dkt. # 19], and a

notice of intent to challenge the government's asserted FOIA exemptions, [Dkt. # 20].  He did not oppose defendants' proposal to proceed via sampling in either pleading and, in fact, in the notice of intent, he stated that he wanted to designate the representative sample.  *See* Notice of Intent at 1.

By Minute Order of September 30, 2011, the Court ordered defendants to prepare the representative sample of the documents it was withholding and transmit the sample to plaintiff along with a letter explaining the representative nature of the sample by October 31, 2011.  The Minute Order also permitted plaintiff to designate any supplemental material by December 1, 2011.  As explained above, defendants complied with the Minute Order, *see* Notice of Designation of Representative Sample, [Dkt. # 22], but plaintiff did not designate any supplemental material.  At no point did plaintiff oppose defendants' proposal to proceed via sampling.  The *Vaughn* indices now at issue index each of the documents in defendants' representative sample.  So, the Court cannot find that the categorical nature of the indices is improper.  *See Bonner*, 928 F.2d at 1151 (finding that since the representative sample was selected by agreement of the parties, "[t]here is therefore no attack on the sample's capacity to represent the entire group of . . . documents").

Although plaintiff complains that the *Vaughn* indices include "generically-grouped categorical listings of documents," Pl.'s Opp. at 10, both indices include specific descriptions of each representative document, whether it is being withheld in full or in part, and specific justifications for the withholding.  *See* Hardy Decl. at 8–13, 17–18 ("FBI Index"); Attachments 1 & 2 to Luczynski Decl. ("EOUSA Index").  Along with this information, defendants have also provided the Court with a copy of all of the redacted representative documents.  Ex. P to Hardy Decl. (FBI); Notice of Filing of Representative Sample [Dkt. # 45] (EOUSA).  Except as noted

later in this Memorandum Opinion, defendants' *Vaughn* indices and submissions satisfy the requirement that an agency withholding information must "provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

Plaintiff's other objections to the adequacy of the *Vaughn* indices – that there is no way for the Court or plaintiff to determine where defendants searched for responsive materials or indicate which agencies were in possession of which documents, and that the searches turned up only a fraction of the nearly 15,000 documents it should have, Pl.'s Opp. at 10, – are merely restatements of his objections to the adequacy of the agencies' searches, which this Court has already rejected.

Accordingly, the Court finds defendants' *Vaughn* indices to be adequate – except as specifically indicated later in this Memorandum Opinion – and the Court need not conduct an *in camera* inspection of the documents. *See PHE, Inc. v. DOJ*, 983 F.2d 248, 253 (D.C. Cir. 1993), quoting *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 120, 1209 (D.C. Cir. 1992) ("*[I]n camera* review is generally disfavored. It is 'not a substitute for the government's obligation to justify its withholding in publicly available and debatable documents.'").

4. <u>With certain exceptions, the FOIA exemptions defendants have invoked adequately justify their withholdings</u>

Plaintiff also challenges the specific FOIA exemptions under which defendants have withheld information. The Court will assess each of them.

A. *Exemption 3*

Defendants relies on Exemption 3 to withhold information covered by 18 U.S.C. § 3509(d) and Federal Rule of Criminal Procedure 6(e).

FOIA Exemption 3 authorizes the government to withhold information that is:

> [S]pecifically exempted from disclosure by statute . . . if that statute
>
> (A)(i)  requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
> (ii)  establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B)  if enacted after the date of enactment of the OPEN FOIA Act of 2009 [enacted Oct. 28, 2009], specifically cited to this paragraph.

5 U.S.C. § 552(b)(3).

Plaintiff concedes defendants properly invoked Exemption 3 to withhold the names and identifying information of child victims and witnesses in plaintiff's prosecution pursuant to the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509(d), which statutorily prohibits disclosure of those types of information.  Pl.'s Opp. at 12.  However, he objects to defendants' invocation of Federal Rule of Criminal Procedure 6(e) as a basis for withholding information concerning the grand jury proceedings in his criminal case.  Defendants have withheld all information obtained pursuant to a grand jury subpoena that was contained in an FBI report of investigation, Hardy Decl. ¶ 40 & p. 11; names of grand jury witnesses, EOUSA Index at 1; and a draft indictment, EOUSA Supplemental *Vaughn* Index at 9.  They justify the withholding under Federal Rule of Criminal Procedure 6(e), which bars disclosure of "matters occurring before [a] grand jury."  Defs.' Mem. at 12.

While Rule 6(e) is not so broad as to bar disclosure of all materials that a grand jury sees or hears, it does cover information that would "tend to reveal some secret aspect of the grand jury's investigation such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors,

and the like."  *Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987) (internal

quotation marks omitted).

Plaintiff does not dispute that Federal Rule of Criminal Procedure 6(e) is a "statute" for

purposes of Exemption 3 or that it prohibits disclosure of matters occurring before a grand jury.

Pl.'s Opp. at 12–13; *see also Fund for Constitutional Govt. v. Nat'l Archives & Records Serv.*,

656 F.2d 856, 867 (D.C. Cir. 1981).   Instead, he argues that since there is no reasonable

expectation that the identities of the testifying witnesses would remain secret, the withholding of

that information is improper.[6]  Pl.'s Opp. at 12–13.  According to plaintiff, the names of most of

the "purported victims who testified in the grand jury," have been revealed to the public at the

sentencing hearing, through television, radio, or other media, and through civil suits that some or

all of the victims brought against plaintiff for which they gave depositions that have become a

part of the public record.[7]  Pl.'s Opp. at 13.  However, plaintiff cites no case law to support the

theory that the public disclosure of any of this type of information makes 6(e) inapplicable, and

he has submitted no evidence that any of this information has actually been made public.  He

offers only conclusory assertions.

Notwithstanding both parties' failures to produce any case law on this issue, there is

relevant precedent from this Circuit.  Although "Rule 6(e) does not create a type of secrecy

---

6       Plaintiff also argues that it is improper to withhold the identities of individuals on the grand jury, Pl.'s Opp. at 12–13, but since there is no indication that this information is being withheld, the Court will not address that argument.

7       Although it is unclear whether plaintiff is also arguing that the public domain exception to the agencies' assertions of Exemption 3 applies here, the Court notes that such an argument also fails.  Under the public domain exception, information preserved in a public record is not exempt from disclosure through any FOIA exemption.  *See Marino v. DEA*, 729 F. Supp. 2d 237, 244 (D.D.C. 2010).  The requester bears the burden of demonstrating that the information sought is already in the public domain.  *See id.*, citing *Davis v. DOJ*, 968 F.2d 1276, 1279 (D.C. Cir. 1992).  Plaintiff has not met that burden here.

which is waived once public disclosure occurs," *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994), quoting *Barry v. United States*, 740 F. Supp. 888, 891 (D.D.C. 1990), the D.C. Circuit has found that "when information is sufficiently widely known" it can lose its character as Rule 6(e) material. *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 505 (D.C. Cir. 1998). In that case, the D.C. Circuit released the identity of a person subpoenaed to appear before the grand jury after his attorney had publicized that fact. *Id.*; *see also In re North*, 16 F.3d at 1245 (finding that Rule 6(e) did not bar release of a report containing grand jury material because the information in the report had been widely publicized); *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) ("Although not every public disclosure waives Rule 6(e) protections, one can safely assume that the 'cat is out of the bag' when a grand jury witness – in this case Armitage – discusses his role on the CBS Evening News."). So although defendants casually dismiss plaintiff's argument as "miss[ing] the mark," Defs.' Reply at 7, it has some teeth.

The problem here, though, is that plaintiff has not supplied the Court with any evidence that the information being withheld was widely publicized or even disclosed to the public at all.[8] Thus, there is no basis to conclude that the evidence withheld, which often does remain secret, has become such a matter of public record that Exemption 3 should not apply.

Plaintiff also argues that the government's assertion of Exemption 3 is too broad: "Nothing in the case law supports the proposition that the government can simply state that all responsive grand jury documents fall within the exemption . . . ." Pl.'s Opp. at 13. In this

---

8       The Court seriously questions whether information concerning the identity of minor witnesses would have been made part of the public record at the plea or at the time of sentencing. One cannot tell from a review of the criminal docket on PACER since the records that pre-date plaintiff's attempts to obtain post-conviction relief were submitted in paper form before the District Court of Alaska made the change to electronic filing. But the fact that plaintiff's new counsel sought access to records under seal, *see* Mot. Requesting Access to Docs. Filed Under Seal, *United States v. Boehm*, Case No. 3:04-cr-00003-JWS (D. Alaska July 16, 2010) [Dkt. # 1011], suggests that at least some aspects of the prosecution were not a matter of public record.

circuit, "[t]he disclosure of information 'coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury' is not prohibited." *Senate of Puerto Rico*, 823 F.2d at 582, quoting *Fund for Constitutional Gov't*, 656 F.2d at 870.  But the EOUSA has given more detailed descriptions of the withheld grand jury documents than plaintiff indicates.  The *Vaughn* index describes the type of information that was withheld:  the names of grand jury witnesses and other contextual information that could lead to the derivation of the name from letters that were exchanged by attorneys, EOUSA Index at 1, and a draft of a grand jury indictment, EOUSA's Supplemental Index at 9.  The Court is satisfied that this information would tend to reveal the secret workings of the grand jury and has been appropriately withheld.[9]  *See Senate of Puerto Rico*, 823 F.2d at 582.

However, the description of the one representative document that the FBI has withheld under Rule 6(e) is vague:  "FBI FD-302 form, Information obtained pursuant to Federal Grand Jury subpoena."  Hardy Decl. at 11 (BOEHM-2738).  The Hardy declaration does little more to clarify the basis for the withholding.  Hardy states, "Exemption [3] has been asserted to protect information obtained pursuant to a Grand Jury Subpoena on page BOEHM-2738.  Disclosure of this material would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of the Federal Grand Jury that considered this case."  Hardy Decl. ¶ 40.  But this description is not detailed enough for the Court to determine whether disclosure of the particular record would reveal some secret aspect of the grand jury's investigation or whether the information was simply peripheral to the grand jury investigation.  *See Senate of Puerto Rico*,

---

9      In addition, this information has been withheld under other FOIA exemptions that the Court will uphold.  *See* EOUSA Index at 1 (also invoking Exemptions 7(C) and 7(F); EOUSA's Supplemental Index at 9 (also invoking Exemption 3 and 5).

823 F.2d at 582.  Is the FBI 302 an agent's summary of material submitted to the grand jury pursuant to subpoena?  A witness interview?  Accordingly, the Court will remand representative document BOEHM-2738 and the other responsive documents it represents to the agency for closer review and supplementation of the basis for the withholding.

Moreover, the Luczynski declaration explains that the U.S. Attorney's Offices may not have even processed some documents that might have been responsive to plaintiff's request if they were found to be "related to the grand jury."  Luczynski Decl. ¶ 11.  But Rule 6(e) is not so broad; it shields matters "occurring before the grand jury."  So, the EOUSA has not provided a sufficient factual basis – or legal support – for its position that these materials are categorically exempt from not only disclosure but any FOIA processing.  This set of materials will therefore also be remanded for further processing and a supplementation of the record.

B.  *Exemption 5*

Exemption 5 allows agencies to withhold records if the requested documents include "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  In determining whether a document was properly withheld under Exemption 5, a court must ensure that the document satisfies two conditions: (1) "its source must be a Government agency, and [(2)] it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  These privileges include the attorney work product and deliberative process privileges.  *Id.*  Because the documents originated from the FBI and from the EOUSA (which is a section within DOJ), the first prong is not at issue here.  The Court

therefore will examine only the second prong of the standard articulated in *Klamath*:  whether the withheld documents are protected by the claimed privilege.  532 U.S. at 8.

Plaintiff concedes that "[t]o the extent that defendants have provided sufficient information regarding withheld documents that may be determined to be attorney work product or otherwise civilly privileged . . . those documents are likely properly withheld."  Pl.'s Opp. at 15.  But he continues:  "To the extent that such documentation contains witness statements or any other exculpatory or mitigating *Brady* materials[,] however, the government must segregate the exempted information and provide the remaining factual information."  *Id*.  Plaintiff provides no support for the proposition that exculpatory or *Brady* materials cannot be withheld under Exemption 5.  And although neither party provides any relevant precedent, there is case law from this circuit that expressly negates that theory.  *See Williams & Connolly v. Sec. & Exch. Comm'n*, 662 F.3d 1240, 1245 (D.C. Cir. 2011) ("[D]isclosure in criminal trials is based on different legal standards than disclosure under FOIA, which turns on whether a document would usually be discoverable in a civil case. . . .  If [plaintiff's counsel] believes that its client should have received the notes during his criminal trial, FOIA is neither a substitute for criminal discovery . . . nor an appropriate means to vindicate discovery abuses . . . .") (citations omitted).

Plaintiff also argues – without pointing to any specific documents – that the *Vaughn* index is not sufficiently detailed and that there is no indication that the agency has released all segregable information.  Pl.'s Opp. at 9–11.  The Court disagrees.  The FBI and EOUSA's *Vaughn* indices as well as the EOUSA's supplemental *Vaughn* index, combined with the explanations in the Hardy and Luczynski declarations, give detailed descriptions of the information that has been withheld, and reveal that the agencies released segregable

information.[10]   Since plaintiff offers no evidence that the descriptions in the declarations are false, the Court finds them to be sufficient.  *See Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) ("[I]t is now well established that summary judgment on the basis of such agency affidavits is warranted if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.").

Accordingly, the Court will uphold defendants' Exemption 5 withholdings.

### C.  *Exemption 7(C)*

FOIA Exemption 7(C) exempts documents compiled for law enforcement that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Because this is a lower standard than the standard for Exemption 6, which requires a "*clearly* unwarranted" invasion of privacy, *id.* 552(b)(6) (emphasis added), the Court will address Exemption 7(C) before it addresses Exemption 6.

In order for particular records to qualify for this exemption, the agency must first demonstrate that the documents were compiled for law enforcement purposes.  *See Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 80 (D.C. Cir. 1974).  Both the Luczynski and Hardy declarations state that all of the information at issue was compiled for law enforcement purposes because it was compiled to as part of the investigation and criminal prosecution of plaintiff.  Luczynski Decl. ¶ 21; Hardy Decl. ¶ 42.  Plaintiff does not contest those assertions.

---

10   For example, document number 6 in the EOUSA's *Vaughn* index is described as "a printout of . . . an online news article from the 'Alaska News.'  The only redactions are handwritten notes on the margin which contained attorney thoughts and observations about the matter."  EOUSA Index at 3.

This Circuit has consistently held that, where a FOIA request for law enforcement records invokes the privacy interests of any third party mentioned in those records (including investigators, suspects, witnesses, and informants), the exemption applies unless there is an overriding public interest in disclosure.  *See Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003); *Lewis v. DOJ*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009).  So the first step in any Exemption 7(C) analysis is to determine whether any privacy interest exists, and then the court balances the privacy interest against the public interest in disclosure.  *See, e.g.*, *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health Dep't of Health & Human Servs.*, 853 F. Supp. 2d 146, 154–59 (D.D.C. 2012).

a)   *There is a privacy interest in the withheld information*

According to the Luczynski and Hardy declarations, as well as the *Vaughn* indices, the information withheld under Exemption 7(C) is identifying information – including names, addresses, phone numbers, e-mail addresses, social security numbers, license plate numbers, birth dates, job descriptions, ages, and photographs – of child victims, third parties of investigative interest, third parties who provided information to the FBI or local law enforcement, potential witnesses in plaintiff's criminal case, other third parties, local law enforcement officers, FBI Special Agents, FBI support employees, and non-FBI federal governmental personnel.  Hardy Decl. ¶¶ 45–46; Luczynski Decl. ¶¶ 21–23.

"As a general rule, third-party identifying information contained in [law enforcement] records is 'categorically exempt' from disclosure." *Lazaridis v. U.S. Dep't of State*, -- F. Supp. 2d --, Civ. A. No. 10-1280(RMC), 2013 WL 1226607, at *12 (D.D.C. Mar. 27, 2013), citing *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (stating that under Exemption 7(C), an agency may "redact the names, addresses, or other

identifiers of individuals mentioned in investigatory files in order to protect the privacy of those persons"); *see also Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990), quoting *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984) ("Exemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.'").

Plaintiff concedes that the exemption applies to identifying information about child victims and witnesses.  Pl.'s Opp. at 17.  However, he argues that there is no privacy interest in the identities of the local law enforcement officers who have appeared in the press concerning his criminal case.[11]  *Id.*  It is well established that Exemption 7(C) protects the identities of local law enforcement officers.  *See, e.g.*, *Thompson v. DOJ*, 851 F. Supp. 2d 89, 99–101 (D.C. Cir. 2012); *Negley v. FBI*, 825 F. Supp. 2d 63, 70–73 (D.D.C. 2011); *Adionser v. DOJ*, 811 F. Supp. 2d 284, 299 (D.D.C. 2011).  And while there is some support for the notion that a private citizen waives her privacy interest in information when she voluntarily brings that information into the public domain, *see Nation Magazine*, 71 F.3d at 896, plaintiff has not met his burden of showing that has occurred here.  To establish that a privacy interest has been waived, the plaintiff bears the burden of showing that the information:  "(1) is 'as specific as the information previously released'; (2) 'match[es] the information previously disclosed'; and (3) 'was made public through an official and documented disclosure.'"  *McRae v. DOJ*, 869 F. Supp. 2d 151, 165 (D.D.C. 2012), quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).  Plaintiff has not met that burden here.  As described above, plaintiff has presented no evidence that any

---

11    Plaintiff actually discusses the privacy interest in disclosure in the section of his opposition concerning Exemption 6, not Exemption 7(C).  However, because both Exemptions 6 and 7(C) require a balancing of the privacy interest in the withheld information against the public interest in disclosure, the Court will consider his privacy interest arguments in assessing the government's application of Exemption 7(C).

individual publicly disclosed his or her role in his criminal prosecution, much less that the information publicly disclosed is the same as the information being withheld. *See Span v. DOJ*, 696 F. Supp. 2d 113, 122 (D.D.C. 2010), quoting *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Because Span has not identified any specific information or . . . 'the *exact* portions' of a specific document that is in fact 'preserved in a permanent public domain,' his public domain challenge fails."). Accordingly, the Court finds a substantial privacy interest in the withheld identifying information.

b) *The privacy interest at stake outweighs the public's interest in disclosure.*

Where a legitimate privacy interest exists, the requester must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Boyd v. DOJ*, 475 F.3d 381, 387 (D.C. Cir. 2007), quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (internal quotation marks omitted). The Supreme Court has determined that the only relevant public interest for purposes of Exemption 7(C) is "the citizens' right to be informed about what their government is up to." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotation marks omitted). In determining whether to disclose a document, a court must weigh "the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *Id.* at 772, quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). "That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.* at 773. Moreover, courts in this Circuit have consistently held that where an individual seeks law enforcement records that implicate the

privacy interests of a third party, the requester bears the burden of asserting the public interest at play. *See, e.g.*, *Boyd*, 475 F.3d at 387; *Lewis*, 609 F. Supp. 2d at 84; *Fischer v. DOJ*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009). Law enforcement records may be withheld under Exemption 7(C) "if the privacy interest at stake outweighs the public's interest in disclosure." *Nation Magazine*, 71 F.3d at 893 (citations omitted).

Plaintiff argues that the public interest here is government wrongdoing. "Plaintiff is trying to obtain information to show that the government had a pattern of failing to disclose material information, specifically information relating to Bill Allen or anyone connected with him." Pl.'s Opp. at 19. And plaintiff submits portions of reports about prosecutorial misconduct in the *Theodore Stevens* case that he claims prove that misconduct occurred in his case as well. *See* Att. 1, 2 to Boehm Decl. However, the portions of the reports plaintiff provides do not reveal any misconduct in his own criminal case – rather, they reveal prosecutorial misconduct in the *Stevens* case that arose because the prosecutor did not disclose information to the *Stevens* defense team that it *had* disclosed during plaintiff's case. *Id.* So, those portions of the reports do not tend to suggest that prosecutorial misconduct occurred in plaintiff's criminal case. *See, e.g.*, *Hodge v. FBI*, 703 F.3d 575, 581 (D.C. Cir. 2013) (finding that a requester failed to establish a valid public interest because he did not "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred"), quoting *Favish*, 541 U.S. at 174; *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (same).

Plaintiff also argues that withholding information as to which authorities investigated him for his criminal case raises Sixth Amendment concerns because "who these individuals were and who they spoke with is relevant to the determination of whether evidence was properly compiled and disclosed in his case." Pl.'s Opp. at 19. This argument fails because, as described above,

disclosure in a FOIA case is governed by different standards than disclosure in a criminal case. The only factors relevant to the Exemption 7(C) analysis are the privacy interest and the public interest in disclosure.  "That the [agency]'s denial of his FOIA requests may hinder his efforts to challenge his conviction or sentence . . . is irrelevant." *Pugh v. FBI*, 793 F. Supp. 2d 226, 232–33 (D.D.C. 2011), citing *Oguaju v. United States*, 378 F.3d 1115, 1116–17 (D.C. Cir. 2004).

Because plaintiff has failed to identify any public interest that would overcome the privacy interest protected by Exemption 7(C), the Court concludes that defendants' withholdings were proper.  And because the withholdings were proper under Exemption 7(C), the Court need not consider Exemption 6.[12]

D. *Exemption 7(D)*

FOIA Exemption 7(D) protects against the disclosure of the identities of confidential informants.  The provision states that "in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation," any "information furnished by a confidential source" is exempt from FOIA's disclosure requirement.  5 U.S.C. § 552(b)(7)(D).  Under this exemption, a person is considered a confidential source "if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Parker v. DOJ*, 934 F.2d 375, 378 (D.C. Cir. 1991).

Plaintiff expresses doubt that the government actually used any confidential informants in this criminal case.  *See* Pl.'s Opp. at 21 ("[T]here was never information revealed during the prosecution of Mr. Boehm that the government had any confidential sources. . . . there is no

---

12    According to the Hardy declaration, the FBI has also invoked Exemption 2 to protect internal telephone numbers of FBI personnel.  Hardy Decl. ¶ 33.  Because the Court finds that this information was properly withheld under Exemption 7(C), it will not reach Exemption 2.

indication that any discussions of confidentiality ever took place between witnesses and investigators."). However, he provides no evidence that confidential informants were *not* used in his case or that the government ever represented to him that no confidential informants were used. So the Court must assess whether defendants have made a sufficient showing that the individuals being protected were confidential informants.

There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation," *DOJ v. Landano*, 508 U.S. 165, 181 (1993), and a source's confidentiality must be determined on a case-by-case basis, *id.* at 179–80. In this circuit, "the violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source." *Higgins v. DOJ*, -- F. Supp. 2d --, Civ. A. No. 10-1485(RLW), 2013 WL 358177, at *12 (D.D.C. Jan. 30, 2013), citing *Mays v. DEA*, 234 F.3d 1324, 1329 (D.C. Cir. 2000).

The Luczynski declaration provides that under Exemption 7(D), the EOUSA withheld "the identities of individuals and material that the individuals provided in connection with the investigation of plaintiff for violation of the federal criminal laws." Luczynski Decl. ¶ 27. According to Lucynski, the withholdings include "information that was provided with an express assurance of confidentiality, as well as information from which the assurance of confidentiality could be reasonably inferred." *Id.* The declaration, however, offers no explanation about how the EOUSA determined that an assurance of confidentiality existed. As to the information that was determined to have been provided under an express assurance of confidentiality, the declaration does not indicate what markings or labels on the documents lead the EOUSA to that conclusion. And as to the information that was determined to have been provided under an

implied assurance of confidentiality, the declaration does not explain whether the information concerned drug trafficking, or whether there was some other reason why the EOUSA concluded that the an assurance of confidentiality had been implied.  So, the Court cannot find that the EOUSA has met its burden with respect to the material it has withheld under this exemption, and it will remand these documents to the agency for a supplementation of the basis for the withholding.

The FBI provides a more detailed picture of the FBI records being withheld under this exemption.  The Hardy declaration divides the types of information withheld into categories.

First, the FBI withheld the confidential informant file numbers and permanent source symbol numbers of certain informants given express assurances of confidentiality.  Hardy Decl. ¶¶ 61–65.

Second, the FBI withheld the names and identifying data of, and information provided by, individuals who assisted in the investigation of plaintiff and others with an express assurance of confidentiality.  *Id.* ¶¶ 66–68.  According to the declaration, the express assurance of confidentiality is demarcated with designations of "Protected Identify," "Cooperating Witness," or "Cooperating Source."  *Id.* ¶ 66.  This information is sufficient for the Court to determine that the information withheld was from confidential sources.

Finally, the FBI withheld the names, identifying information and information provided by individuals under an implied assurance of confidentiality.  Hardy Decl. ¶¶ 59–60.  The Hardy declaration explains that the individuals "were reporting on distribution of cocaine to individuals under the age of 18, often for purposes of sexual gratification."  *Id.* ¶ 59.  Therefore, according to the Hardy declaration, "it can be implied that these individuals would reasonably fear that disclosure of their identity would place them in danger, because other individuals who had

involvement with the defendants were not incarcerated, including traffickers in narcotics." *Id.* ¶ 59. The declaration also states that the only information that has been withheld is the individual's name and the information that the individual provided, but only to the extent that the information would identify the individual. *Id.* This description of the individuals and the withheld information makes clear that the individuals being protected were reporting on the type of activities that warrant an implied grant of confidentiality. Moreover, it provides a rationale for protecting the information so that the protected individuals will not be subject to reprisal and so that it does not dissuade others from reporting information in the future. *Id.* Accordingly, the FBI has demonstrated that withholding the information is proper. *See Higgins*, 2013 WL 358177, at *12–13.

Plaintiff also claims that even if discussions of confidentiality did occur, "most testifying individuals in this case later publicly identified themselves via radio, newspaper stories, television interview, public lawsuits, or allowed their names to be used in a published book." Pl.'s Opp. at 21. But, as already described, plaintiff provides no evidence that any informants in his case later publicly identified themselves, let alone evidence that they identified themselves in a way that would waive the protection of Exemption 7(D). *See Parker*, 934 F.2d at 378, quoting *Dow Jones & Co. v. DOJ*, 908 F.2d 1006, 1011 (D.C. Cir. 1990) (finding that the protection of 7(D) is only waived if "the exact information given to the FBI has already become public, and the fact that the informant gave the same information to the FBI is also public").

Plaintiff finally argues that since the government had no confidential sources, it is most likely claiming Exemption 7(D) to withhold information from "the sources that it did have under the erroneous theory that such an exemption may be claimed for anyone communicating with the government regarding a criminal investigation." Pl.'s Opp. at 22. But since plaintiff has failed

to establish that the government did not utilize confidential sources – either with express or implied assurances of confidentiality – and since the government denies invoking Exemption 7(D) as broadly as plaintiff implies, Defs.' Reply at 10; Luczynski Decl. ¶ 27; Hardy Decl. ¶¶ 59–68, and there is no evidence of bad faith, the Court will not adopt plaintiff's theory.

### E.  *Exemption 7(E)*

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations of prosecutions, or would disclose guidelines for law enforcement investigations of prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Plaintiff does not dispute that the records at issue here were compiled for law enforcement purposes. Pl.'s Opp. at 22.

"Exemption 7(E) sets a relatively low bar for the agency to justify withholding:  Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (alteration in original) (internal quotation marks omitted).

The FBI is the only agency that has invoked Exemption 7(E) to withhold responsive records.  It has withheld three types of records under that exemption.  First are documents showing methods of data collection, organization and presentation contained in ChoicePoint reports and discussion of ChoicePoint records in FBI electronic communications.  The Hardy declaration explains that although the data contained in the sources is publicly available, the manner in which the data is searched, organized and reported to the FBI is an internal technique that is not known to the public.  Hardy Decl. ¶ 72.  Therefore, the disclosure of the reports and

information about their design and makeup could enable criminals to employ countermeasures to avoid detection.   Hardy Decl. ¶ 71.   The D.C. Circuit has upheld the FBI's withholding of records to protect methods of data collection, organization, and presentation contained in ChoicePoint reports under the same justifications that the FBI has provided here.   *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).   Because the FBI has provided sufficient information for the Court to find that disclosure of the ChoicePoint reports and the electronic communications about them might create a risk of circumvention of the law, the Court finds the withholdings to be proper.

Second, the FBI has withheld information in form FD-515 FBI Accomplishment Reports "which would reveal the use of specific investigative assistance or techniques in this case." Hardy Decl. ¶ 73.   FD-515 forms are used by FBI Special Agents to report investigative accomplishments, such as arrests, indictments, or convictions.   *Id.* at 10 n.10.   Only one FD-515 report appears on the FBI's *Vaughn* index and the index indicates that it was withheld in part.   *Id.* at 10.   At least three courts in this district have upheld the agency's withholding of an entire FBI-515 form.   *Perrone v. FBI*, 908 F. Supp. 24, 28 (D.D.C. 1995); *Putnam v. DOJ*, 873 F. Supp. 705, 717 (D.D.C. 1995); *Delviscovo v. FBI*, 903 F. Supp. 1, 3 (D.D.C. 1995).   The Court finds that the FD-515 Accomplishment reports were appropriately withheld in this case based on the explanation in the Hardy declaration that disclosure of the special investigative assistance or techniques used in this case might reasonably create a risk of circumvention of those techniques. Other courts in this district have found that the ratings column of the form FD-515 is properly withheld under Exemption 7(E).   *See, e.g.*, *Sellers v. DOJ*, 684 F. Supp. 2d 149, 164 (D.D.C. 2010); *Concepcion v. FBI*, 606 F. Supp. 2d 14, 43 (D.D.C. 2009); *Peay v. DOJ*, No. 04-1859,

2007 WL 788871, at *6 (D.D.C. Mar. 14, 2007). Accordingly the Court will uphold the agency's partial withholding of the representative FD-515 report.

Third, the FBI has withheld an FBI/Police Operational Plan and information pertaining to the techniques used to facilitate the activity of a source. Hardy Decl. ¶ 73. Again, the Hardy declaration states that if criminals were alerted to this information, they would be able to alter their behavior in ways that would diminish the ability of law enforcement to rely on this type of information. *Id.* The Court finds that to be an appropriate justification for withholding the information under Exemption 7(E) because it explains how disclosure could reasonably be expected to risk circumvention of the law.

Plaintiff's objections to these withholdings are not clearly delineated. It appears that he objects to the withholding of any documentation relating to "improper coaching of testimony" because such a technique is not legal. Pl.'s Opp. at 23. But he cites no precedent for this assertion, and in any event, the description of the withheld materials reflect that they relate to investigatory techniques and not to witness preparation for Court testimony.

Accordingly, the Court finds that the FBI's withholdings under Exemption 7(E) are proper, that the *Vaughn* index describes the withheld material in sufficient detail, and that the FBI has met its burden of showing that all segregable material was released.

## F.  *Exemption 7(F)*

Exemption 7(F) exempts from disclosure information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Again, plaintiff does not oppose defendants' assertion that the documents at issue here were compiled for law enforcement purposes. Pl.'s Opp. at 23–24. In determining whether Exemption 7(F) applies, courts look for

some nexus between disclosure and possible harm and whether deletions were narrowly made to avert the possibility of such harm. *Albuquerque Publ'g Co. v. DOJ*, 726 F. Supp. 851, 858 (D.D.C. 1989).

The Luczynski declaration reveals that the EOUSA has withheld identifying information about individuals who work for the government or who provided information in the course of an investigation under Exemption 7(F). Luczynski Decl. ¶¶ 29–30. According to the declaration, there may be individuals still at large who were involved with the cocaine trafficking and sexual exploitation of underage women that was the focus of the investigation into plaintiff. *Id.* ¶ 29. Although plaintiff argues that defendants proffer no evidence that the investigation into plaintiff concerned any violence, Pl.'s Opp. at 24, courts in this circuit typically consider a conspiracy to distribute cocaine to be "a violent enterprise, in which a reputation for retaliating against informants is a valuable asset . . . ." *Mays*, 234 F.3d at 1331. In addition, this exemption has generally been interpreted "to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester." *Anotonelli v. Fed. Bur. Of Prisons*, 823 F. Supp. 2d 55, 58 (D.D.C. 2009). Therefore, the Court finds that the EOUSA has established that disclosure of the withheld information – identifying information about informants and individuals who work for the government – could reasonably be expected to endanger the safety of those individuals by making them available to un-detained participants in the cocaine trafficking and sexual exploitation activities that were the focus of the investigation into plaintiff. On that basis, the Court finds that the EOUSA's withholdings under Exemption 7(F) were proper.

According to the Hardy declaration, the FBI has asserted Exemption 7(F) to protect a law enforcement interview with plaintiff.  Hardy Decl. ¶ 75.[13]  The basis for the withholding is that the release of the interview could reasonably be expected to endanger the life and/or physical safety of plaintiff.  Plaintiff challenges this justification, stating that "it seems unlikely that plaintiff, knowing the existence of this document, would seek its disclosure if doing so would result in a threat on his life . . . ."  Pl.'s Opp. at 24.

Generally this exemption protects the identities of federal employees, informants, and third persons who may be unknown to the requester, *Durham v. DOJ*, 829 F. Supp. 428, 434 (D.D.C. 1993), and neither party provides any case law about whether Exemption 7(F) can properly be asserted to protect the safety of the requester himself.  The Court has identified only one relevant opinion from this district.  *Mosby v. Hunt*, Civ. A. No. 09-1917(JDB), 2010 WL 2794250, at *1 (D.D.C. July 15, 2010), *summarily affirmed* 2011 WL 3240492 (D.C. Cir. July 6, 2011).  In *Mosby*, the government asserted Exemption 7(F) over certain redactions under the theory that "release of the redacted information creates a safety risk mostly to plaintiff."  *Id.*  The court observed that "by its terms, Exemption 7(F) protects '*any* individual,'" which could be read to include even the requester of the information.  *Id.* at *1 (emphasis added).  It ultimately decided that the redactions were proper because the agency "reasonably determined that the disclosure of the withheld information could 'jeopardize the safety of individuals(s),' [sic] including plaintiff."  *Id*.

In a different case, *Ray v. FBI*, another court in this district declined to protect the identifying information of the FOIA requester in a document responsive to his request, even though the information was about the requester's activities as a confidential informant, which

---

13      The pages being withheld are BOEHM 3853–3858.  Hardy Decl. ¶ 75 n.38.

was entitled to protection under Exemption 7(D). 441 F. Supp. 2d 27, 37 (D.D.C. 2006) ("In light of [plaintiff's] apparent waiver [of exemption 7(D)'s confidential informant protection], the Court is not inclined to protect plaintiff from information about himself.")

Here, the only individual that the FBI is seeking to protect is plaintiff.  Hardy Decl. ¶ 75. Given that plaintiff has waived any concern for his own safety, the Court finds that Exemption 7(F) is inapplicable.  However, since the FBI has also asserted Exemptions 6 and 7(C) over portions of the interview, *See* Hardy Decl. at 12, the Court will remand to the agency to release all portions of the interview that are being withheld under Exemption 7(F), but not under Exemptions 6 or 7(C).

Finally, plaintiff opposes defendants' assertion of Exemption 7(F) on the basis that most of the individuals whose information is being protected have already been publicly identified through their own lawsuits or actions or by way of the investigation into the *Stevens* case.  Pl.'s Opp. at 25.  As the Court has already discussed in detail, this argument fails because plaintiff fails to submit evidence that any particular individual publicly identified him or herself or that the information publicly disclosed is the same as the information being protected here.

5.    <u>Defendants have met their burden of showing that they extracted segregable portions of responsive records.</u>

FOIA expressly requires agencies to extract "[a]ny reasonably segregable portion of a record" and provide it to the requesting party "after deletion of the portions which are exempt." 5 U.S.C. § 552(b)(9).  "[I]t has  long been the rule in this Circuit that non-exempt portions of a document  must  be  disclosed  *unless*  they  are  inextricably  intertwined  with  exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004), quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Agencies and courts must "differentiate among the contents of a document rather than treat it as

an indivisible 'record' for FOIA purposes." *Abramson*, 456 U.S. at 626.  Regardless of whether

a party actually challenges an agency's determination on the segregability of requested records, a

district court must not "simply approv[e] the withholding of an entire document without entering

a finding on segregability, or the lack thereof." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d

1205, 1210 (D.C. Cir. 1992) *abrogated on other grounds by Milner v. Dep't of Navy*, 131 S. Ct.

1259, 1271 (2011) (internal quotation marks omitted); *see also Sussman v. U.S. Marshals Serv.*,

494 F.3d 1106, 1116 (D.C. Cir. 2007) ("If the district court approves withholding without such a

finding [of segregability], remand is required even if the requester did not raise the issue of

segregability before the court.").   The district court's findings of segregability must be

"specific." *Sussman*, 494 F.3d at 1116.

        The government bears the burden of demonstrating that no reasonably segregable

material exists in the withheld documents. *Army Times Publ'g Co. v. Dep't of Air Force*, 998

F.2d 1067, 1068 (D.C. Cir. 1993).  The agency must "provide[] a 'detailed justification' and not

just 'conclusory statements' to demonstrate that all reasonably segregable material has been

released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010); *see also Armstrong*, 97 F.3d

at 578 (affirming summary judgment where government affidavits explained non-segregability

of documents with "reasonable specificity").   The government may meet its obligation of

"reasonable specificity" with "[t]he combination of the *Vaughn* index and [agency] affidavits."

*Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002); *see also Loving v.

Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008).  Whether the *Vaughn* index is sufficient "turns

on whether the agency has sufficiently explained why there was no reasonable means of

segregating factual material from the claimed privilege material." *Wilderness Soc'y*, 344 F.

Supp. 2d at 18.  "[A] blanket declaration that all facts are so intertwined" is not sufficient to meet this burden.  *Id.* at 19.

The Court finds that, except where identified above, defendants have met their burden of showing with reasonable specificity that they disclosed all segregable material.  Throughout the Hardy declaration, the declarant consistently identifies the specific information that the FBI has withheld from documents, i.e., names and identifiers, symbols, phone numbers, etc.  And where full documents have been withheld, the *Vaughn* index in combination with the declaration and the copies of the representative sample documents that have been filed on the docket in this case explain why no segregable material could be released.  *See, e.g.*, Hardy Decl. ¶¶ 38, 48, 60, 68.

Although the section of the Luczynski declaration labeled "Segregability" contains only a conclusory assurance that the EOUSA considered the segregability of the requested records and that no reasonably segregable non-exempt information was withheld, Luczynski Decl. ¶ 31, the Court finds that the EOUSA has also met its burden of showing with reasonable specificity that all segregable responsive information has been disclosed to plaintiff.  As explained throughout this Memorandum Opinion, the *Vaughn* index and supplemental *Vaughn* index, the descriptions in the Luczynski declaration of the particular information withheld, and the copies of representative sample documents that have been filed on the docket together provide sufficient information about the particular information that was withheld and its ability to be segregated from non-exempt information.

## CONCLUSION

For the abovementioned reasons, the Court will grant in part and deny in part defendants' motion for summary judgment.  The Court will remand for closer review and supplementation of the basis for the withholding:  (1) the representative document found at page number BOEHM-

2738 and any documents it represents; (2) documents that the EOUSA has withheld under the explanation that they are "related to the grand jury"; and (3) information that the EOUSA has withheld under Exemption 7(D).  The Court will also remand the representative document found at page numbers BOEHM 3853 to 3858, and any documents it represents, to the FBI for the release to plaintiff of all portions that are being withheld under Exemption 7(F), but not under Exemptions 6 or 7(C).  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  June 10, 2013